**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**KEY WEST DIVISION**

| | |
|---|---|
| **DANI CROWLEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | Case#_____ |
| ) | |
| **UNUM LIFE INSURANCE** ) | |
| **COMPANY OF AMERICA,** ) | |
| **and UNUM GROUP** ) | |
| **CORPORATION,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## COMPLAINT FOR THE RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA

The Plaintiff, DANI CROWLEY (CROWLEY) sues the Defendants,

UNUM LIFE INSURANCE COMPANY OF AMERICA (UNUM LIFE)

and UNUM GROUP CORPORATION (UNUM) and states:

### Jurisdiction and Venue

1.     This is an action for relief under the Employee Retirement

Income Security Act (ERISA), 29 U.S.C. § 1001 et. seq. This Court has

jurisdiction pursuant to 28 U.S.C. §1337 and ERISA § 502(e), 29 U.S.C.

§ 1132(e).

2.     Defendant UNUM LIFE is an insurance company licensed to transact business in Florida, which is or was at all relevant times engaged in business in within this District.

3.     Defendant UNUM is the parent company of Defendant Unum Life and is registered in Florida as an active Foreign Profit Corporation which is or was at all relevant times engaged in business within this District.

4.     Defendant UNUM exercises significant control over the policies and actions of Defendant UNUM LIFE.

5.     Defendant UNUM is the employer of all persons who acted on behalf of UNUM LIFE.

6.     CROWLEY is a former employee of Baptist Health South Florida, and resides in Marathon FL.

7.     Venue is proper within the Southern District of Florida pursuant to 29 U.S.C. §1132(e)(2).

**<u>Governing Plan and ERISA Standard of Review</u>**

**The Plan:**

8.     CROWLEY is and/or was a participant in each of the plans, funds, programs, or arrangements described herein, or in the alternative, was at all times relevant a participant in each of the plans, funds, programs, or arrangements described herein.

9.    CROWLEY is a former employee of Baptist Health South Florida

10.    At all relevant times, CROWLEY was a participant in an employee benefit plan (hereafter referred to as "the Plan") sponsored by Baptist Health South Florida which provided disability benefits to participants.

**Plan Funding & ERISA Standard of Review – De Novo:**

11.    Baptist Health South Florida funded its Plan by purchasing a group policy of insurance (policy #99609 012) underwritten by UNUM LIFE.   A copy of this policy is attached hereto Exhibit "A" and is incorporated by reference.

12.    The group policy (Exhibit A) was drafted in its entirety by UNUM or UNUM LIFE.

13.    The group policy (Exhibit A) is a contract of adhesion.

14.    UNUM or UNUM LIFE and Baptist Health South Florida use the group insurance policy (Exhibit A) as both the Plan document and Summary Plan Description (SPD).

15.    No other plan documents exist other than the group insurance policy (Exhibit A).

16.    No originating plan document exists which instituted the Baptist Health South Florida Disability Plan.

17.    No originating plan document or other document exists in which Baptist Health South Florida reserved any discretionary authority to itself in relation to the Plan.

18.    The employees or agents of Baptist Health South Florida and UNUM or UNUM LIFE did not discuss or correspond about the existence, meaning, or significance of delegating discretionary authority from Baptist Health South Florida to UNUM or UNUM LIFE before purchasing the group insurance policy (Exhibit A) to fund the Plan.

19.    The employees or agents of Baptist Health South Florida and UNUM or UNUM LIFE did not discuss or correspond about the existence, meaning, or significance of the process required to delegate discretionary authority from Baptist Health South Florida to UNUM or UNUM LIFE before purchasing the group insurance policy (Exhibit A) to fund the Plan.

20.    At the inception of the Plan, Baptist Health South Florida did not retain to itself the authority to delegate discretionary authority of any type to an insurance company from which it was to purchase an insurance policy to fund the Plan.

21.    At the time it purchased the group disability insurance policy (Exhibit A) from UNUM or UNUM LIFE, Baptist Health South

Florida did not have any discretionary authority which it could delegate to an insurance company.

22.     The group disability insurance policy (Exhibit A) was drafted entirely by UNUM or UNUM LIFE.

23.     No document prepared by Baptist Health South Florida delegates any discretionary authority to UNUM or UNUM LIFE.

24.     Additionally, the Plan clearly states that the "This policy is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments."  Exhibit A.

25.     De novo review applies to this action because of one of the following:

> a. Neither UNUM or UNUM LIFE were delegated discretionary authority such that its claim decision is entitled to a discretionary review or arbitrary and capricious standard of review, because or one or more of the following:
>
> > i. Baptist Health South Florida never had the authority to delegate discretion to UNUM or UNUM LIFE following the inception of the Plan;

ii. The group insurance policy (Exhibit A) is a contract of adhesion drafted entirely by the funding source company which cannot inject discretion into the plan for the first time;

iii. If it had power to delegate discretion, Baptist Health South Florida did not properly delegate discretionary authority over claims decisions to UNUM or UNUM LIFE.

**Conflict Must be Considered:**

26.    UNUM or UNUM LIFE pays claims from its own general assets as the claims decision maker and funder of the group insurance policy (Exhibit A).

27.    UNUM or UNUM LIFE is the Plan's claims administrator, handling claims under the insurance policy (Exhibit A).

28.    Any claims paid under the group insurance policy (Exhibit A), are paid by UNUM or UNUM LIFE entirely from UNUM's or UNUM LIFE's assets.

29.    No assets of Baptist Health South Florida are used to pay claims under the group insurance policy (Exhibit A).

30.    If this Court determines that de novo review does not apply to this matter, any conflict on the part of either defendants must be

weighed in relation the actions or opinions of either Defendants' employees, agents or experts, to include but not be limited to:

    a.  assessing the impact of the conflict on whether a full and fair review was provided, and/or

    b. decreasing the weight afforded by the court to the opinions or actions of Defendants' employees or hired experts that are contained in the ERISA Record.

31.    UNUM's or UNUM LIFE's conflict of interest must be weighed as a factor in this court's review of the decision in CROWLEY's claim for various reasons, including but not limited to:

    a.    UNUM or UNUM LIFE operated under a perpetual conflict of interest because of its role as claims decider and payer of claims from its assets.

    b.    UNUM or UNUM LIFE allowed its concern over its own funds to influence its decision-making.

    c.    When UNUM or UNUM LIFE denies a claim before all of the contractual benefits are paid, that is referred to as a "recovery."

    d.    UNUM or UNUM LIFE establishes monthly financial targets that are reached by denying claims whose reserves would cumulatively meet those targets.

e.     The monthly financial targets for denying claims (described in paragraph 31.d. above) are called "recovery plans," or words to that effect.

f.     The monthly targets, or "recovery plans," including the dollar amounts to be reached in terms of reserves on denied or "recovered" claims and the count of total claims that should be recovered.

g.     These "recovery plans" were given by Vice Presidents (often through the Vice President's administrative assistant) in the claims department to Assistant Vice Presidents in writing and verbally.

h.     The Vice President also gave to the Assistant Vice Presidents a list of claims that had been identified as potential "recoveries," which list included the names of individual insureds and the reserve amount associated with the claims of those insureds.

i.     The list of claims that were potential recoveries, including the reserve amounts, was transferred by the Vice President by hard copy printouts.

j.     The recovery plans and the list of potentially recoverable claims provided to the Assistant Vice President are

disseminated by the Assistant Vice Presidents to the Directors they supervised and are used by the Assistant Vice President to coach or supervise their Directors.

k.      Directors at UNUM or UNUM LIFE are the employees who ultimately make the decision to approve or deny claims for benefits.

l.      The recovery plans and the list of potentially recoverable claims that are given to the Assistant Vice Presidents is passed on to Directors verbally, so there will be no record of the Directors being told their monthly financial targets of "recoveries" or denied claims.

m.      After the Assistant Vice Presidents passes on the recovery plans and the list of potentially recoverable claims to the Directors, the Assistant Vice Presidents shred the documents that contained the names of individual insurers and their reserve amounts.

n.      The Directors use this information, and the targeted financial amounts to guide them and the claims handlers under them to deny meritorious claims in order to meet the "recovery plan" for their team.

o.      In order to receive bonuses under UNUM's or UNUM LIFE's incentive program, UNUM and/or UNUM LIFE employees are evaluated against certain criteria, which include planned claim terminations, expected liability acceptance rates, and anticipated reopen rates. (*see e.g.*, Exhibit B, ID Director Scorecards).

p.      Internal documents reveal that targets and goals for claim closures are set at the unit level and that there are goals set for open claim recoveries (i.e., denying an open claim) per day. (*See* Exhibit C, Weekly Tracking Reports).

q.      In a deposition, Anthony Scuderi—who was an Assistant Vice President with Unum—confirmed Unum continues to target individual claims for their value; testifying that his supervising Vice President would provide him with printed sheets that included the names and financial reserve value of claimants each month; that he would copy the information in those sheets onto a spreadsheet on his personal computer; that he would then verbally disseminate that information to the claim managers he supervised; that he would shred the paper document; and that he would report back to his supervising Vice President periodically on the progress of meeting their "paid recovery" metric (*See* Exhibit

D, selected excerpts from the deposition of Anthony Scuderi). He testified that he believed this was the common practice of all Unum AVPs. *See, Id.*

      r.     In essence, UNUM LIFE's claims and appeals units were provided the targets for claim closures and uphold decisions and then were provided the specific claims that would meet those expectations.

      s.     Paul Peter, another former-Assistant Vice President for UNUM, testified that he received the "recovery plan" each month from his Vice President, Maureen Griffin, and that he passed this information down to the Directors he supervised. (See Exhibit E, selected excerpts from the deposition of Paul Peter). Paul Peter also testified that he received the list of claims that were identified as potential recoveries, which included the names of the claimants and the reserve amount associates with their claim. *See, Id*. Paul Peter confirmed that he and the Directors he supervised were graded and held accountable for meeting the "recovery plan" and he impressed upon his Directors the importance of meeting the planned numbers. See, Id., at p. 29-30.

      t.     UNUM's or UNUM LIFE's targeting of Plaintiff's claim for denial taints all evidence it develops and rebut the court

may decisions that you should give deference to our decision during the review of his claim as the review was designed to reach the result of a denial, not an impartial weighing of the evidence.

u.     UNUM or UNUM LIFE breached its fiduciary duties to Plaintiff, including the duty of loyalty.

32.     UNUM or UNUM LIFE have acted under a policy to take advantage of the potential applicability of ERISA to claims.

33.     UNUM's or UNUM LIFE's decision-making process violated ERISA by failing to give the Plaintiff a full and fair review of the claim.

34.     UNUM's or UNUM LIFE's decision-making process violated the terms of the applicable ERISA Plans and ERISA law and regulations.

### The Long Term Disability Benefit Claim

35.     CROWLEY became disabled on November 8, 2018, and made a claim for Long Term Disability benefits under the Plan.

36.     CROWLEY was approved for Long Term Disability Benefits August 21, 2019, with benefits being paid retroactively back to May 20, 2019.

37.     UNUM or UNUM LIFE terminated CROWLEY's benefits on April 15, 2020.

38.     CROWLEY filed a timely appeal on October 12, 2020.

39.     UNUM or UNUM LIFE responded to the appeal on January 08, 2021, stating it would pay benefits from April 16, 2020, to May 19, 2020.

40.     UNUM or UNUM LIFE denied payment of benefits past May 19, 2020.

41.     CROWLEY's various conditions are either unchanged or have progressively worsened since UNUM originally approved her Long Term Disability claim.

42.     UNUM failed to rely on CROWLEY's treating doctors who have not released her back to work in any capacity.

43.     CROWLEY's restrictions and limitations create vocational limitations that do not allow her to return to work in any capacity even a part time capacity.

44.     Objective testing and CROWLEY's providers opined CROWLEY was unable to work in any job or in any work environment due to her restrictions and limitations.

45.     CROWLEY appealed this denial on February 19, 2021.

46.     UNUM or UNUM LIFE upheld its denial on May 20, 2021.

47.     CROWLEY is unable to meet the demands or requirements of any occupation due to the restrictions and limitations outlined by her physicians.

48.     CROWLEY has not been released back to work in any capacity.

49.     With respect to all claims made herein, CROWLEY exhausted all administrative remedies by pursuing all necessary pre-suit appeals required under the plan and 29 C.F.R. §2560.503-1.

### Benefits in Controversy

50.     CROWLEY is entitled to benefits under the Plan consisting for Long Term Disability since the date of termination, May 20, 2020, through the date of filing this action, as she has met the definition of disability based upon restrictions and limitations related to her impairments.

51.     Benefits under the group disability insurance policy are calculated at a rate of 60% of CROWLEY's gross basic monthly earnings.

52.     As of the date of filing this action, UNUM or UNUM LIFE owes CROWLEY a total of 12.67 monthly benefit payments for an aggregate sum of $21,647.06.

53.     Plaintiff is entitled to benefits herein because:

        (a)     The benefits are permitted under the Plan.

        (b)     Plaintiff has satisfied all conditions to be eligible to receive the benefits.

(c)     Plaintiff has not waived or otherwise relinquished entitlement to the benefit.

54.     Each monthly benefit payment owed since June 14, 2019, is a liquidated sum and became liquidated on the date the payment was due and payable.  Plaintiff seeks pre-judgment interest on each such payment.

55.     Pursuant to ERISA § 502(g), 29 U.S.C. §1132(g), CROWLEY is entitled to an award of reasonable attorney fees and costs incurred in an action brought under ERISA.  Plaintiff has been required to obtain the undersigned attorney to represent her in this matter and has agreed to a reasonable attorney fee as compensation to him for his services.

**WHEREFORE**, the Plaintiff, DANI CROWLEY, asks this Court to enter judgment against the Defendants, UNUM LIFE INSURANCE COMPANY OF AMERICA and UNUM GROUP CORPORATION, finding that:

(a)     The Plaintiff is entitled to Long Term Disability benefits from May 20, 2020, and through filing of this lawsuit; and

(b)     Awarding benefits in the amount not paid to the Plaintiff from May 20, 2020, to the date of filing this lawsuit - a total of $21,647.06, together with pre-judgment interest at the legal rate on each monthly payment from the date it became due until the date it is paid,

and declare entitlement to any additional benefits owed to Plaintiff from the time of filing this Complaint to the time of Judgment in this action; and

(c)     Award reasonable attorney fees and costs incurred in this action; and

(d)     For such other and further relief as this Court deems just and proper, including but not limited to:

1.     a declaration that Plaintiff's same claim for benefits continues after the last date of benefits awarded by the Court, without need to file a new application for benefits, and

2.     remanding Plaintiff's claim to the Plan Administrator for further action to address continuing benefits after the final date of benefits awarded by this Court, and

3.     ordering Defendants to advise Plaintiff's former employer or any other necessary entity that benefits in this action were properly paid through the date of this Court's Order awarding benefits for purposes of coordinating or reinstating any ancillary benefits which should properly be paid or for which coverage

should be awarded as a result of Plaintiff's receipt of

disability benefits under the Plan.

DATED this 11th day of June 2021.

       ***s/ William C. Demas***
WILLIAM C. DEMAS, ESQUIRE
Florida Bar # 0142920
JOHN V. TUCKER, ESQUIRE
Florida Bar # 899917
TUCKER LAW GROUP, P.A.
5235 16th Street North
St. Petersburg, Florida 33703
Tel.:  (727) 572-5000
Fax:  (727) 571-1415
tucker@tuckerlawgroup.com
demas@tuckerlawgroup.com
Attorneys and Trial Counsel for Plaintiff